UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| ALVIN D. CARSON, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:05-CV-294 |
| | ) | (VARLAN/SHIRLEY) |
| AJN HOLDINGS and | ) | |
| THE PEPSI BOTTLING GROUP, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This civil action is before the Court on five motions: (1) defendants' motion for summary judgment [Doc. 30]; (2) plaintiff's motion to amend his complaint to add a claim of whistle blowing [Doc. 29]; (3) plaintiff's motion to amend his complaint to add a claim of violation of the National Labor Relations Act [Doc. 36 at 3]; (4) plaintiff's motion to amend his complaint to increase his prayer for relief to $8 million [*id.*]; and (5) defendants' motion to strike [Doc. 46]. The Court will address each motion in turn.

**I.      Relevant Facts**

Plaintiff, Alvin Carson, was hired as a full-time employee by defendant Pepsi Bottling Group ("PBG") in 1998 and was employed there until he was discharged on May 14, 2004, at which point he was working as a forklift driver in PBG's warehouse. [Doc. 31, Att. 1 ("Pl's Dep.") at 28-29.] Plaintiff was given a copy of PBG's Employee Handbook at the

beginning of his employment, which he read it and signed a written acknowledgment agreeing to abide by it. [*Id.* at 39-40.]

In 2003, the attendance policy included in the Employee Handbook was modified to provide that three "no call/no show" absences on the part of an employee within a rolling twelve month period would result in termination of that employee. [Doc. 33, Ex. A ("Attendance Policy") at 2.] A no call/no show absence is defined by the policy as one where an employee either "notifies [his or her] supervisor more than two hours after [the] start of [their] shift" that he or she will be absent or where an employee "never calls [his or her] supervisor and does not show up." [*Id.*] The policy also provides that in the event of an absence from work, an employee is "responsible for contacting their supervisor directly, prior to the start of their shift. Only leaving a voice mail is unacceptable." [Attendance Policy at 3.] PBG states that the reason for this provision is because "not every supervisor is scheduled to work every day, and they may not be able to check or receive voice mail messages." [Doc. 31 at 3.] Plaintiff was given a copy of this revised attendance policy and reports that he was familiar with it. [Pl's Dep. at 92.]

In 2004, plaintiff accumulated the absences that are at issue in this lawsuit. Plaintiff does not contest that he was absent from work on March 6, 2004, April 24, 2004, and May 13, 2004. [Pl's Dep. at 108, 116-117.] While plaintiff argues that he left voice mails for his immediate supervisor, Larry Maso, on each of those days informing Mr. Maso that he would not be working his scheduled shift, [*id.* at 120], he also admits to knowing that the new attendance policy made it unacceptable for an employee to only leave a voice mail regarding

2

an absence. [*Id.* at 104-105.] Mr. Maso states that he never received any of these voice mails. [Doc. 32 at ¶ 4.]

After plaintiff's second no call/no show absence on April 24, 2004, Mr. Maso and David Rookstool, Mr. Maso's immediate supervisor, met with plaintiff to discuss his attendance violations and at this meeting, issued him a written "Disciplinary Action Report" detailing plaintiff's various attendance violations and requesting that he review PBG's attendance policy. [*Id.* at ¶ 5.] Later that month, plaintiff reported to Mr. Maso that his absence on April 24 was because he was experiencing eye irritation from an injury he had suffered while working two weeks earlier. [*Id.* at ¶ 7.] Mr. Maso subsequently helped plaintiff complete the paperwork necessary for filing a worker's compensation claim with PBG. [*Id.*] That claim was processed in accordance with PBG policy, [Doc. 34 at ¶ 8], and plaintiff was reimbursed for the expenses he incurred in getting treatment for his eye injury. [Pl's Dep. at 62.]

After plaintiff's third no call/no show absence on May 14, 2004, plaintiff was informed that he was suspended from work pending further investigation, [*id.* at ¶ 6], and was ultimately terminated, the reason given to plaintiff being that he had violated the no call/no show provision of PBG's attendance policy. [Doc. 34 at ¶¶ 5-6.]

Plaintiff filed suit in the Circuit Court for Knox County on May 13, 2006, alleging that he was wrongfully discharged by PBG and defendant AGN Holdings, both of whom plaintiff claims were his employers, for "discharging the plaintiff from his employment with them due to plaintiff's worker's compensation claim... ." [Doc. 1, Att. 1 at ¶ 8.] Plaintiff

seeks $75,000 in compensatory damages and $250,000 in punitive damages. PBG removed the lawsuit to this Court pursuant to 28 U.S.C. § 1332.

**II.     Defendants' Motion for Summary Judgment**

    A.     Standard of Review

Under Fed. R. Civ. P. 56(c), summary judgment is proper if "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." The burden of establishing there is no genuine issue of material fact lies upon the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of witnesses, and determine the

truth of the matter. *Id.* at 249. Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

  B. <u>AJN Holdings</u>

  Defendants argue that plaintiff's claim of retaliatory discharge alleged against AJN Holdings should be dismissed because AJN Holdings was never plaintiff's employer and had no part in any of the employment decisions at issue in this case. [Doc. 31 at 1.] In response, plaintiff simply states that "AJN Holdings is a part of the Pepsi Bottling Group" [Doc. 44 at 1] and that "AJN Holdings was my Employer" [Doc. 48 at 1], but presents no evidence to support these contentions.

  To state a claim for retaliatory discharge under Tennessee law, a plaintiff must show in addition to other factors that he or she was an employee of the defendant at the time of the claimed injury. *Anderson v. Standard Register Co.*, 857 S.W.2d 555, 558 (Tenn. 1993). Here, defendants state that AJN Holdings is "a company that as a supplier issued payroll checks for PBG." [Doc. 31 at 1.] The Court has undertaken its own investigation and has determined that at the time of plaintiff's employment by PBG, AGN Holdings was a subsidiary of PBG. Pepsi Bottling Group, Inc., Annual Report (Form 10-K) at Exhibit 21 (February 28, 2005). A parent company can be held liable for the discriminatory actions of a wholly owned subsidiary company alleged by an employee of that subsidiary where the parent's control of the subsidiary exceeds that normally exercised by a separate parent

corporation, *see, e.g.*, *Armbruster v. Quinn*, 711 F.2d 1332 (6th Cir. 1983); *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990 (6th Cir. 1997). However, the Court can find no case where a subsidiary has been held liable for the discriminatory actions of a parent company where those actions are alleged by an employee of the parent. Accordingly, the Court finds that AJN Holdings was not an employer of plaintiff within this context. Thus, because plaintiff was not employed by AJN Holdings, he cannot have been discharged from his employment with it. *See Griggs v. Coca-Cola Employees' Credit Union*, 909 F. Supp. 1059, 1063 (E.D. Tenn. 1995) (elements of statutory retaliatory discharge claim include plaintiff's status as an employee of the defendant and the employer's discharge of the employee); *Crews v. Buckman Labs. Intern., Inc.*, 78 S.W.3d 852, 862 (Tenn. 2002) (elements of common law retaliatory discharge claim include that an employment-at-will relationship existed and that the employee was discharged). Therefore, the Court will grant defendants' motion for summary judgment as to plaintiff's claim against AJN Holdings.

C.  PBG

As to defendant PBG, defendants present two arguments in support of its motion for summary judgment. First, defendants argue that plaintiff cannot make out a prima facie case of retaliatory discharge for filing a claim for workers' compensation because he is unable to show there was a causal relationship between his filing a claim for worker's compensation benefits and PBG's termination of his employment. [Doc. 31 at 8-9.] Second, defendants argue that plaintiff cannot prove that the reasons for his termination were pretextual because he was discharged for violating PBG's attendance policy. [*Id.* at 11-12.]

In *Clanton v. Cain-Sloan Co.*, the Tennessee Supreme Court first recognized an employee's tort action brought against his or her employer for so-called "retaliatory discharge" taken against that employee for filing or threatening to file a workers' compensation claim. 677 S.W.2d 411 (Tenn. 1984). Subsequently in *Anderson v. Standard Register Co.*, the court articulated the elements of such a cause of action. 857 S.W.2d 555, 558 (Tenn. 1993). To make out a prima facie case of retaliatory discharge, a plaintiff must prove that: (1) the plaintiff was an employee of the defendant at the time of the injury; (2) the plaintiff made a claim against the defendant for workers' compensation benefits; (3) the defendant terminated the plaintiff's employment; and (4) the claim for workers' compensation benefits was a substantial factor in the employer's motivation to terminate the employee's employment. *Id.* Once each of those elements is established, the burden shifts to the employer–defendant to articulate a "legitimate, non-pretextual nonretaliatory reason for the discharge." *Id.* The *Anderson* court went on to note that "[t]he reason may involve the employee's own shortcomings, such as unexplained tardiness, excessive absenteeism, lying as to previous compensation claims, or physical inability to do the job." *Id.*

Here, plaintiff has established, and defendants do not dispute, the first three prima facie elements: plaintiff was an employee of PBG, plaintiff made a claim against PBG for workers' compensation benefits, and plaintiff's employment was terminated by PBG. However, defendants argue that plaintiff cannot establish that there was a causal relationship between the workers' compensation claim and his discharge. [Doc. 31 at 9.]

7

A plaintiff may establish the causal connection between the claim and the discharge through either direct or compelling circumstantial evidence. *Thomason v. Better-Bilt Aluminum Products, Inc.*, 831 S.W.2d 291, 293 (Tenn. Ct. App. 1992) (noting that, "in order to get to the jury, there must be proof of causation other than the facts showing employment, the exercise of rights under the workers' compensation act, and a subsequent discharge."). While courts have been hesitant to articulate the kind of evidence that definitively establishes such a causal relationship, there is ample opinion on what does not create that link. For example, subjective beliefs and mere speculation on the part of the plaintiff are insufficient to create the requisite causal relationship. *Chappell v. GTE Products Corp.*, 803 F.2d 261, 268 (6th Cir. 1989). Causation also cannot be established "simply because plaintiff cannot think of any other reasons for his discharge." *Vaughan v. Harvard Industries, Inc.*, 926 F. Supp. 1340, 1350 (W.D. Tenn. 1996). Most applicable to this case, however, is that "a plaintiff may not prevail on a wrongful discharge claim merely by showing that a causal connection exists between her on-the-job injury and her subsequent discharge. Instead, the plaintiff must show that her claim for workers' compensation benefits, as opposed to her injury, was the true or substantial reason for her discharge." *Reed v. Alamo Rent-A-Car, Inc.*, 4 S.W.3d 677, 685 (Tenn. Ct. App. 1999) (internal citations removed).

Aside from the bare allegation in his complaint that "the defendants were acting in a retaliatory manner in discharging the plaintiff from his employment with them du to the plaintiff's worker compensation claim," [Compl. at 2], plaintiff presents no evidence, direct or otherwise, suggesting a causal connection between his workers' compensation claim and

his discharge. Plaintiff's response to defendants' motion for summary judgment primarily recounts various details about his absences from work accrued over 2003 and 2004, mentioning that some absences were due to doctor's appointments and another was a "paid sick day covered by worker's compensation." [Doc. 36 at 2.] However, simply because plaintiff was absent from work due to the injury over which his workers' compensation claim was filed does not create the essential causal connection to make out a prima facie claim of retaliatory discharge. *See Reed*, 4 S.W.3d at 685. Viewing the facts in the light most favorable to plaintiff, as the Court is required to do on a motion for summary judgment, plaintiff has presented no evidence to create a genuine issues of material fact on there being a causal connection between his claim and his discharge. Thus, because there is no evidence in the record on which to submit the issue of causation to the jury, defendants are entitled to judgment as a matter of law. *Anderson*, 857 S.W.2d at 558-59.

Even if plaintiff were able to establish a causal connection between his workers' compensation claim and his discharge, PBG has articulated a legitimate, non-pretextual reason for plaintiff's discharge: that plaintiff was discharged for violating PBG's attendance policy, which provides that "three no-call/no-show absences in a rolling twelve month period will result in termination from PBG." [Doc. 31 at 12.] As the Tennessee Supreme Court articulated in *Anderson*, excessive absenteeism is one such legitimate reason for termination. 857 S.W.2d at 559. Plaintiff admits as much in his response to defendants' motion for summary judgment, stating that "unexcused absences from work or refusal to accept particular assignment would be good cause for discharge." [Doc. 36 at 3.] Plaintiff goes on

9

to suggest that PBG's "exercise of [this] right is tainted with a discriminatory motive," [*id.*], but presents no evidence suggesting why PBG's stated reason for terminating him is pretextual. Because plaintiff has failed to show any indication of there being a causal link between the filing of his worker's compensation claim and his discharge and because PBG articulated a legitimate, non-discriminatory reason for plaintiff's discharge, defendants are entitled to judgment as a matter of law.

## III. Plaintiff's Motions to Amend

Plaintiff has filed three motions to amend his complaint: (1) a motion to add a claim for "whistleblowing" [Doc. 29], (2) a motion to add a claim for violation of the National Labor Relations Act ("NLRA") [Doc. 36 at 3], and (3) a motion to amend his complaint to seek $8 million in damages [*id*].[1] Defendants have opposed each of plaintiff's motions. As to plaintiff's amendment to add a claim for whistle blowing, defendants argue that the amendment is both barred by the equitable doctrine of laches [Doc. 39 at 2] and futile because plaintiff's whistle blower claim will ultimately be unsuccessful [*id.* at 3.] As to plaintiff's amendment to add a claim for violation of the NLRA, defendants argue that such a claim is time-barred by the expiration of the Act's 6-month statute of limitations. [Doc. 43 at 6.] As to plaintiff's amendment of his prayer for relief, defendants argue that plaintiff's

---

[1] With each of his motions to amend, the Court notes that plaintiff has not followed Local Rule 15.1, which provides that "[a] party who moves to amend a pleading shall attach the original and one copy of the amendment to the motion." L.R. 15.1. However, as the rule notes, failure to comply with this rule is not grounds for denial of the motion and therefore, the Court will not hold the above requirement against plaintiff, particularly given his *pro se* status.

opportunity to amend his complaint in this way is barred by the expiration of the amended pleadings deadline set forth in the Court's scheduling order. [*Id.*]

Leave to amend under Federal Rule of Civil Procedure 15(a) is liberal and "shall be freely given when justice so requires." FED. R. CIV. P. 15(a). However, a court must balance harm to the moving party if he or she is not permitted to amend against prejudice caused to the other party if leave to amend is granted. *Foman v. Davis*, 371 U.S. 178, 182 (1962). For example, if amendment of a claim would be futile because the claim to be added is not legally cognizable, amendment should be denied. *Jet, Inc. v. Sewage Aeration Sys.*, 165 F.3d 419, 425 (6th Cir. 1999). The Court will address each of plaintiff's motions to amend in turn.

### A. Whistle Blowing Claim

Although plaintiff does not specify in his motion to amend the kind of whistle blowing claim he anticipates bringing against defendants, defendants correctly note in their response that there are only two such claims recognized under Tennessee law: (1) a claim for retaliatory discharge under common law for an employee's refusal to violate public policy of the state of Tennessee and (2) a claim under the Tennessee Public Protection Act. § 50-1-304. In accordance with the substantial leeway granted to *pro se* litigants, the Court will assume that plaintiff intends to amend his complaint to add both such claims and will accordingly address both.

To state a claim for retaliatory discharge under common law, plaintiff must prove that: (1) an employment-at-will relationship existed; (2) that he was discharged; (2) that the reason for his discharge was that he attempted to exercise a statutory or constitutional right, or for

11

any other reason which violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision; and (4) that a substantial factor in the employer's decision to discharge him was his exercise of protected rights or compliance with clear public policy. *Crews v. Buckman Laboratories Int'l, Inc.*, 78 S.W.3d 852, 862 (Tenn. 2002).

As discussed previously, it is undisputed in this case that plaintiff was an employee of PBG and was discharged from his employment. However, plaintiff has failed to establish that the reason for his discharge was that he attempted to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy evidenced by an unambiguous constitutional, statutory or regulatory provision. The Court notes that the only evidence before it as to any whistle blowing on the part of plaintiff was presented not by plaintiff, but by defendants in their response [Doc. 39] to plaintiff's motion to amend his complaint. Defendants state that at plaintiff's deposition, he theorized that PBG was motivated to terminate him because of complaints he made to the Tennessee Human Rights Commission and OSHA about his working conditions in 2000, some four years before he was ultimately discharged.[2] [Doc. 39 at 5.] Apart from this speculation on the part of plaintiff, there is no evidence in the record suggesting that plaintiff was terminated for any other reason than violating PBG's attendance policy, which plaintiff himself admits is "good

---

[2] Defendants go on to note in their response that after plaintiff made his first Tennessee Human Rights Commission complaint in January of 2000, he was not fired, but was awarded two pay raises in January 2002 and one in February 2004. [Doc. 39 at 5-6.]

cause for discharge." [Doc. 36 at 3.] In this way, plaintiff has failed to show that his exercise of protected rights or compliance with clear public policy was a factor, much less a substantial one, in PBG's decision to discharge him and has failed to state a claim for retaliatory discharge due to whistle blowing under common law.

The requirements for stating a claim for whistle blowing under the Tennessee Public Protection Act are identical to those under the common law scheme, except that under the statute, whistle blowing or refusing to participate in unlawful activities, must be the sole reason for the discharge. *Guy v. Mutual of Omaha Ins. Co.*, 79 S.W.3d 528, 537 (Tenn. 2002). Given that plaintiff has failed to present evidence showing that his exercise of protected rights or compliance with clear public policy was a substantial factor in PBG's decision to discharge him, he cannot meet the higher threshold of showing that the sole reason for his discharge was whistle blowing on his part. Therefore, plaintiff has also failed to state a claim for whistle blowing under the Tennessee Public Protection Act.

In sum, the Court finds that plaintiff's claim of whistle blowing – whether brought under the common law or under the Tennessee Public Protection Act – does not have merit and therefore amendment of plaintiff's complaint to add those claims would be futile. *Jet*, 165 F.3d at 425. Accordingly, plaintiff's motion to amend his complaint to add a claim of whistle blowing is denied.[3]

---

[3]Because the Court has determined that plaintiff's motion to amend to add a claim of whistle blowing should be barred for other reasons, the Court need not address defendants' argument that the addition of such claim should be barred by the doctrine of laches.

B.  NLRA Claim

Defendants argue that any claim plaintiff may have for violation of the NLRA is time-barred by the Act's six month statute of limitations. [Doc. 43 at 6.] Section 10(b) of the NLRA provides that "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board." 29 U.S.C. § 160(b). This sixth month period begins running from the date that the plaintiff "discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." *Taylor Warehouse Corp. v. NLRB*, 98 F.3d 892, 899 (6th Cir. 1996) (internal citations removed).

Defendants report that at plaintiff's deposition, he testified that his involvement in a union at PBG was in 2000 or 2001. [Doc. 43 at 6.] Even if the action serving as the basis for plaintiff's alleged NLRA violation occurred on the last day of his employment, which was May 14, 2004, that claim is barred by the NLRA's statute of limitations. Furthermore, as defendants note, even if plaintiff's NLRA claim were allowed to relate back to the filing of his complaint, which occurred on May 13, 2005, the claim would still be time-barred. Thus, it appears that plaintiff's proposed amendment would be futile, as any NLRA claim he may have is barred by the statute of limitations. Accordingly, plaintiff's motion to amend his complaint to add a claim for violation of the NLRA is denied.

C. Increase of Prayer for Relief

Because there are no causes of action remaining against defendants, allowing plaintiff to amend his complaint to increase his prayer for relief to $8 million serves no purpose. Accordingly, plaintiff's motion to amend his prayer for relief is denied as moot.

IV. **Defendants' Motion to Strike**

Lastly, defendants have filed a motion to strike [Doc. 46] in which they request that two of the supplemental briefs filed by plaintiff [Docs. 44, 45] be stricken on three grounds. First, defendants argue that these briefs violate Local Rule 7.1(d) because they do not call the Court's attention to any developments occurring after plaintiff filed his response to defendants' motion for summary judgment and add "nothing new to the prior briefing filed before the Court." [Doc. 47 at 2.] Second, defendants argue that plaintiff's briefs should be stricken because they fail to comply with Fed. R. Civ. P. 56(e), which admonishes a party responding in opposition to a motion for summary judgment to "not rest upon the mere allegations or denials of the adverse party's pleadings," but to use affidavits to "set forth specific facts showing that there is a genuine issue of for trial." [*Id.*] Third, defendants argue that plaintiff's briefs should be stricken because they contain hearsay statements that are inadmissible under Fed. R. Evid. 802.

It is well-settled that motions to strike are disfavored and should be granted only when "the allegations being challenged are so unrelated to plaintiff's claims as to be unworthy of any consideration as a defense and that their presence in the pleading throughout the

proceeding will be prejudicial to the moving party." 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1380 at p. 650 (2nd ed. 1990). *See F.D.I.C. v. Berry*, 659 F. Supp. 1475, 1479 (E.D. Tenn. 1987); *McKinnie v. Lundell Mfg. Co.*, 825 F. Supp. 834, 835 (W.D. Tenn. 1993). Striking a pleading is considered "a drastic remedy to be resorted to only when required for the purposes of justice" and it "should be sparingly used by the courts." *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953). Thus, mindful of this principle and the well-established tradition that federal courts treat *pro se* litigations more leniently than they would parties represented by attorneys, the Court will deny defendants' motion to strike.

## V. Conclusion

For the reasons set forth herein, the Court finds as follows: defendants' motion for summary judgment [Doc. 30] is **GRANTED** and plaintiff's claims against defendants are dismissed with prejudice; plaintiff's motion to amend his complaint to add a claim of whistle blowing [Doc. 29] is **DENIED**; plaintiff's motion to amend his complaint to add a claim of violation of the NLRA [Doc. 36 at 3] is **DENIED**; plaintiff's motion to amend his complaint to increase his prayer for relief [Doc. 36 at 3] is **DENIED as moot**; and defendants' motion to strike [Doc. 46] is **DENIED**.

The Clerk is directed to enter judgment accordingly.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE